IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

BRENDA S. AGBUNAG,　　　　　 )　　　CIVIL NO. 04-00656 HG-LEK
　　　　　　　　　　　　　　　 )
　　　　　Plaintiff,　　　　　 )
　　　　　　　　　　　　　　　 )
　　　vs.　　　　　　　　　　 )
　　　　　　　　　　　　　　　 )
JO ANNE B. BARNHART, ETC.,　 )
　　　　　　　　　　　　　　　 )
　　　　　Defendant.　　　　　 )
_____ )

### FINDINGS AND RECOMMENDATION TO REVERSE
### THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

Plaintiff Brenda S. Agbunag ("Plaintiff") brought this
action against Defendant Jo Anne Barnhart, Commissioner of Social
Security ("Defendant" or "Commissioner"), challenging the
Commissioner's decision that Plaintiff is not disabled and is not
entitled to disability insurance benefits.  The Court finds this
matter suitable for disposition without a hearing pursuant to
Rule LR7.2(d) of the Local Rules of Practice of the United States
District Court for the District of Hawai`i ("Local Rules").  Upon
careful consideration of the record and the briefs submitted by
the parties, this Court HEREBY FINDS and RECOMMENDS that the
district court REVERSE the Commissioner's decision for the
reasons below.

### BACKGROUND

Plaintiff filed an application for disability insurance
benefits on March 20, 2002, alleging that she has been disabled
since September 11, 2001.  Plaintiff claimed to be disabled

because of neck and back problems stemming from a motor vehicle
accident in July 2000.  Plaintiff had "some" college education
and her prior employment included work as an account service
representative, accounting clerk, restaurant cashier, day care
worker, telemarketer, and customer service representative.
[Administrative Record ("AR") at 16-18.]  The Social Security
Administration ("SSA") denied Plaintiff's claim initially and on
reconsideration.  Plaintiff timely filed a request for hearing.
The Administrative Law Judge ("ALJ"), Henry M. Tai, held the
hearing on July 24, 2003.  Plaintiff and a vocational expert
("VE") testified at the hearing.  [AR at 16, 21.]

          The ALJ issued his decision on September 17, 2003.  In
determining whether Plaintiff was disabled, the ALJ applied the
five-step analysis described in 20 C.F.R. § 404.1520.  First, the
ALJ found that Plaintiff was not engaged in substantial, gainful
activity.  Second, the ALJ noted that Plaintiff had "disc
herniations at C3-4 and L3-4, and possible facet joint mediated
pain" and that these impairments were severe.[1]  [AR at 17.]
Third, the ALJ found that Plaintiff's injuries did not meet or
equal a listed impairment, which would preclude all work.  The
ALJ found that there were discrepancies between Plaintiff's

_____

          [1] The ALJ also noted that Plaintiff had been diagnosed with
mild reactive depression, but that Plaintiff did not allege that
it was a disabling condition.  [AR 19-20.]  She has also been
diagnosed with a moderate sleep disorder.  [See, e.g. AR 218.]

assertions about her limitations and the medical evidence in the record and concluded that the record did not support a finding that Plaintiff's conditions were so severe as to preclude all work.  [Id.]  The ALJ found that Plaintiff still had the residual functional capacity ("RFC") to perform sedentary work.  Fourth, based on the VE's testimony, the ALJ found that Plaintiff could return to her past relevant work as a telemarketer, account clerk, and insurance clerk, none of which required exertion beyond Plaintiff's RFC.  [AR at 20.]  The ALJ therefore concluded that Plaintiff was not under a disability as defined by the Social Security Act and was not entitled to disability insurance benefits.  [AR at 20-21.]

Plaintiff requested review of the ALJ's decision.  On August 30, 2004, the Appeals Council declined review, rendering the ALJ's decision the Commissioner's final decision.  [AR at 3-5.]  Plaintiff filed her complaint in the instant case on November 5, 2004, seeking judicial review of the decision.

In her First Amended Memorandum in Support of Complaint[2] ("Opening Brief"), filed on October 13, 2005, Plaintiff argues that the Court should find that the ALJ's decision is not supported by substantial evidence because: 1) the ALJ failed to give proper weight to the opinions of Plaintiff's

---

[2] Plaintiff filed the original memorandum on October 3, 2005.

treating physician and the medical evidence does not support the ALJ's decision; [Opening Brief at 3-6;] 2) the ALJ erred in his assessment of Plaintiff's credibility; [id. at 6-9;] 3) the ALJ failed to consider Plaintiff's obesity; [id. at 9-10;] and 4) the ALJ erred in finding that Plaintiff's headaches did not constitute a severe impairment and in failing to consider her headaches in determining her RFC.  [Id. at 10-11.]  Plaintiff seeks a remand for an immediate award of benefits.  In the alternative, she seeks a remand with instructions to fully address the issues she raised in this appeal.  [Id. at 11-12.]

Defendant filed her answering brief on November 2, 2005.  Defendant argues that there was substantial evidence supporting the ALJ's decision because: 1) the ALJ properly discounted the treating physician's opinions and observations, which would have established impairments severe enough to render her disabled; [Answering Brief at 4-9;] 2) the ALJ properly found that Plaintiff was not credible; [id. at 9-13;] 3) the ALJ was not required to consider Plaintiff's obesity because Plaintiff did not raise that impairment in her disability application, hearing testimony, or request for Appeals Council review, and because there is no medical evidence in the record that her obesity caused her impairments; [id. at 13-15;] and 4) substantial evidence supported the ALJ's finding that Plaintiff's headaches did not significantly impair her ability to work.  [Id.

4

at 15-17.]

Plaintiff filed her First Amended Reply Brief ("Reply") on November 17, 2005.[3] Plaintiff reiterates the arguments she raised in the Opening Brief.  In addition, Plaintiff argues that her treating physician's observations were consistent with Listing 1.04 and that, at a minimum, the ALJ should have asked him to provide a specific analysis according to the listed impairments.  [Reply at 2-4.]  Plaintiff further argues that the record does not support the ALJ's adverse credibility ruling because the irregularities in the medical record are not relevant to the case.  [Id. at 8-10.]  Plaintiff points out that her testimony about her ability to perform daily activities differed from her earlier written statements because her condition had deteriorated.  The differences therefore cannot be the basis of an adverse credibility finding.  [Id. at 10-11.]  With regard to the ALJ's failure to consider her obesity, Plaintiff responds that Social Security regulations require adjudicators to consider obesity at all levels of the review process.  She also contends that she did present medical evidence of her severe obesity. [Id. at 12-14.]

## STANDARD

---

[3] Plaintiff also filed the original reply brief on November 17, 2005.

Federal courts review decisions of the Commissioner, acting through the ALJ, to determine whether the decision is supported by substantial evidence or is based on an error of law. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (citation and quotation marks omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance[.]"  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003) (citation and quotation marks omitted).  Under this standard, if the ALJ's decision is supported by the reasonable inferences from the record and there is evidence supporting more than one rational interpretation, the court must affirm the ALJ's decision.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  The court may not substitute its judgment for the ALJ's.  See id. at 1196. Further, the court must not reverse the ALJ's decision if the errors were harmless.  See Burch, 400 F.3d at 679.  In determining whether the decision is supported by substantial evidence, the court must consider the administrative record as a whole, weighing the evidence supporting the decision as well as the evidence in favor of reversal.  See Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).

**DISCUSSION**

6

I.   **Eligibility for Disability Benefits**

In order to establish that she is eligible for social security disability benefits, Plaintiff had to demonstrate that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" See 42 U.S.C. § 423(d)(1)(A).  An ALJ evaluates a claimant's request for disability benefits based on a five-step analysis.  See 20 C.F.R. § 404.1520; see also Burch, 400 F.3d at 679.

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity".  See 20 C.F.R. §§ 404.1574, 404.1575 (guidelines for "substantial gainful activity").  If the claimant is engaged in substantial gainful activity, she is not disabled.  See § 404.1520(a)(4)(i).

Second, the ALJ considers whether the claimant has a medically severe impairment or combination of impairments and whether the impairment meets the duration requirement.[4]  If the claimant does not have a medically severe impairment, or combination of impairments, that meets the duration requirement,

_____

[4] "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  We call this the duration requirement."  20 C.F.R. § 404.1509.

7

she is not disabled.  See § 404.1520(a)(4)(ii).  In order to be considered severe, the impairment or combination of impairments must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities[.]"  See § 404.1520(c).

The third factor also considers the severity and duration of the claimant's impairments or combination of impairments.  If the claimant's impairment, or combination of impairments, meets or equals one of the impairments listed in Appendix 1 to Subpart P, Regulation 4, and satisfies the duration requirement, she is disabled.  See § 404.1520(a)(4)(iii).

Fourth, if the claimant is still able to perform her "past relevant work"[5] in light of her "residual functional capacity",[6] she is not disabled.  See § 404.1520(a)(4)(iv).

At the final step, the ALJ considers the claimant's RFC, as well as her age, education, and work experience.  If, in light of these considerations, the claimant can adjust to other

---

[5] "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 404.1560(b)(1) (citing 20 C.F.R. § 404.1565(a)).

[6] A claimant's "residual functional capacity" is the most she can do in light of the limitations caused by her impairment or impairments and the associated symptoms, including pain.  See 20 C.F.R. § 404.1545(a)(1).  In determining the claimant's residual functional capacity, the ALJ considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]"  § 404.1545(a)(4).  The ALJ determines a claimant's residual functional capacity based on "all the relevant medical and other evidence" in the record.  See §§ 404.1520(a)(3), 404.1545(a)(3).

work, she is not disabled.  If she cannot make the adjustment, she is disabled.  <u>See</u> § 404.1520(a)(4)(v).  The other work the claimant can perform "must exist in significant numbers in the national economy (either in the region where [she] live[s] or in several regions in the country)."  20 C.F.R. § 404.1560(c)(1).

The claimant bears the burden of establishing disability in steps one through four.  Once the claimant establishes that she cannot perform her past relevant work, the burden shifts to the Commissioner to establish that the claimant can perform other work.  <u>See</u> <u>Burch</u>, 400 F.3d at 679.

## II.  <u>ALJ's Analysis</u>

Plaintiff argues that the ALJ erred in: 1) finding that her headaches did not constitute a severe impairment; 2) failing to give proper weight to the opinions of her treating physician, D. Scott McCaffrey, M.D.; 3) finding that the medical evidence showed that her impairments did not meet or equal a listed impairment; 4) making an adverse credibility finding; and 5) failing to consider her obesity and her headaches in determining her RFC.  The Court will address Plaintiff's arguments as they apply to the five-step analysis.[7]

### A.  <u>Step One</u>

---

[7] Insofar as he found that Plaintiff could perform her past relevant work, the ALJ did not reach step five.

9

The ALJ found that Plaintiff was not engaged in substantial gainful activity.  [AR at 17.]  Neither party contests this finding.

B.   **Step Two**

The ALJ found that Plaintiff had "disc herniations at C3-4 and L3-4, and possible facet joint mediated pain,"[8] and that these impairments were severe.  [AR 17.]  Although noting that Plaintiff testified that she is unable to perform basic work activities for prolonged periods due in part to chronic headaches and that Plaintiff reported headaches to Dr. McCaffrey, the ALJ did not make a finding regarding whether Plaintiff's headaches constituted a severe impairment.  Plaintiff argues that this was reversible error.[9]  [Opening Brief at 10-11.]

A person's impairments or combination of impairments are considered severe if they "significantly limit[] [her] physical or mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c).  Social Security Ruling ("SSR") 85-28 expands upon this definition and states, in pertinent part:

---

[8] Although Defendant characterizes Plaintiff's impairments as "minor", [Answering Brief at 4,] Defendant does not directly argue that the ALJ's step two finding is erroneous.  The Court will therefore assume that Defendant does not contest it.

[9] Plaintiff also argues that the ALJ erred in finding that her cervical condition was not severe.  [Reply at 4.]  This Court need not address this argument because Plaintiff did not raise the issue before the Appeals Council.  [AR at 6-7.]  See Bergfeld v. Barnhart, 361 F. Supp. 2d 1102, 1110 (D. Ariz. 2005).

>An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).

SSR 85-28, underline available in West's Social Security Reporting Service (1983 – 1991 Rulings) at 393 (1992).  Plaintiff argues that the record contains ample evidence that her headaches cause more than a slight abnormality and more than a minimal imposition on her ability to work.  [Opening Brief at 11.]

The ALJ's repeated references to Plaintiff's headaches indicates that he did consider them, but apparently considered them as part of the combination of impairments arising from her disc herniations.  This is consistent with the medical evidence in the record.  Dr. McCaffrey's reports consistently state that Plaintiff's headaches are related to her disc herniations.  For example, his most recent report, dated December 10, 2002, lists his diagnostic impressions as:

>1.   Cervical disc protrusion C3-4 with right C4 radiculopathy.
>. . . .
>4.   Severe myospastic cephalgia[10] related to #1

---

[10] A myospasm is a muscle spasm and cephalgia is a headache.  See Dorland's Illustrated Medical Dictionary 1168, 1172, 321
(continued...)

above with growing frequency.
[AR 218.]  Dr. McCaffrey's November 19, 2002, October 22, 2002,
and September 10, 2002 reports contain the same diagnoses, [AR
227, 236, 245,] as do the "WORK RESTRICTION PROFILE" forms
completed in 2003.[11]  [See AR 308-15.]  Dr. McCaffrey's earlier
reports reflect similar diagnoses, without the myospastic
element.  [See, e.g., AR 255 (August 13, 2002 report), 111 (April
16, 2002 report), 150 (December 11, 2001 Work Restriction
Profile).]  Dr. McCaffrey's "HEADACHE QUESTIONNAIRE", dated
June 27, 2003, also indicates that Plaintiff's headaches are
accompanied by neck pain due to her ruptured discs.  [AR 322.]
Thus, the medical evidence establishes that Plaintiff's headaches
are associated with her disc herniations.  This Court therefore
finds that the ALJ did not err in failing to address whether
Plaintiff's headaches constituted a separate severe impairment.

   C.   **Step Three**

      Appendix 1 "describes, for each of the major body
systems, impairments which are considered severe enough to
prevent a person from doing any gainful activity."  20 C.F.R. §
404.1525(a).  A claimant cannot establish that her impairment
meets a listed impairment merely by proving she has been

---

      [10](...continued)
(29th ed. 2000).

      [11] This Court notes that the writing on some of the profiles
is illegible.

diagnosed with the listed impairment; she must also manifest the findings associated with the listed impairment.  See §
404.1525(d).  A claimant's impairment is equivalent to a listed impairment "if the medical findings are at least equal in severity and duration to the listed findings."  20 C.F.R. §
404.1526(a).  Equivalency is based on a comparison of "the symptoms, signs, and laboratory findings about [the claimant's] impairment(s), as shown in the medical evidence . . . , [and] the medical criteria shown with the listed impairment."  Id.  The Ninth Circuit has held that, in making the equivalency determination, the ALJ must "explain adequately his evaluation of alternative tests and the combined effects of the impairments."  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

The ALJ made a conclusory finding that Plaintiff's impairments were not severe enough to meet or medically equal one of the listed impairments.  He did not analyze any of the potentially applicable listings or discuss any specific medical evidence that supported his ruling.  The ALJ stated only that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment."  [AR at 17.]  This alone is an inadequate explanation of the basis for the ALJ's equivalency finding.  See Marcia, 900 F.2d at 176. The ALJ, however, analyzed the medical evidence that arguably could have supported an equivalency finding in his discussion of

13

Plaintiff's RFC.  [AR 18-19.]

Plaintiff argues that the ALJ should have found that her impairments meet or medically equal Listing 1.04A.  [Opening Brief at 5-6.]  Listing 1.04A provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
> A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.  The ALJ found that Plaintiff has disc herniations at C3-4 and L3-4.  [AR at 17.] Further, although not mentioned by the ALJ, this Court notes that Michael J. Meagher, M.D., interpreted Plaintiff's October 5, 2001 cervical spine MRI, and found that the C3-4 herniation "IMPINGES UPON THE PATH OF THE LEFT C4 ROOT", [AR at 175 (emphasis in original),] and that Dr. McCaffrey's reports consistently include Dr. Meagher's findings.  [See, e.g., AR 216 (December 10, 2002 report).]  This diagnosis satisfy the requirement that the spine disorder result in compromise of a nerve root.  The Court therefore finds that Plaintiff was diagnosed with the impairments listed in Listing 1.04.  Plaintiff, however, must also manifest

14

the findings associated with Listing 1.04A to justify a an
equivalency finding.

In his discussion of Plaintiff's RFC, the ALJ noted
that Dr. McCaffrey found that Plaintiff had "persistent muscle
spasm and limitation of motion in the spine with approximately
50% range of motion in the cervical spine and about 70% range of
motion in the lumbar spine" and that Plaintiff had positive
straight-leg raising tests in the sitting and supine positions.
[AR 19.]  The ALJ also noted that Dr. McCaffrey's finding that
Plaintiff's muscle strength had decreased to "3/5".  [Id.]  These
observations arguably meet the findings articulated in Listing
1.04A.  The ALJ, however, found that the clinical records did not
support Dr. McCaffrey's observations.

Plaintiff argues that the ALJ erred in failing to give
Dr. McCaffrey the deference that should be afforded a treating
physician.  When there is conflicting medical evidence, the ALJ
must determine the relative credibility of the physicians and
resolve the conflict.  See Batson v. Comm'r of Soc. Sec. Admin.,
359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ must generally give
greater weight to the opinion of the treating physician and "must
give specific, legitimate reasons for disregarding the opinion of
the treating physician."  Id. (citation and quotation marks
omitted).  "The ALJ can meet this burden by setting out a
detailed and thorough summary of the facts and conflicting

15

clinical evidence, stating his interpretation thereof, and making findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (citation and quotation marks omitted).  Where, however, the treating physician's opinion is not controverted, the ALJ must articulate clear and convincing reasons for rejecting it.  See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

Dr. McCaffrey gave the disputed findings in response to the "DISORDERS OF THE SPINE QUESTIONNAIRE – 1.04A" ("Spine Questionnaire"), [AR 316-19,] one of several forms that he filled out on June 27, 2003.  The forms are the most recent documentation of Plaintiff's condition.  They appear to be based on a review of Plaintiff's medical history and do not appear to be associated with a single examination.  Dr. McCaffrey's most recent examination report was on December 10, 2002.  [AR 214-22.] Plaintiff apparently saw Dr. McCaffrey seven times from January 2003 to June 2003, but Dr. McCaffrey did not prepare reports following those visits.  There is only a single-page "WORK RESTRICTION PROFILE" for each visit.  The profiles list Dr. McCaffrey's diagnoses but do not discuss any specific information from the examinations.  [AR 308-315.]  The diagnoses in the 2003 profiles appear to be largely consistent with the diagnoses recorded in the December 10, 2002 report.  [Compare AR 218 with AR 309.]  Thus, there is no documentation of the decline in Plaintiff's condition that is reflected in the Spine

Questionnaire.

As noted by the ALJ, Dr. McCaffrey consistently finds that there is no antalgia[12] or motion abnormality in Plaintiff's gait. [See, e.g., AR 217 (December 10, 2002 report), 243 (September 10, 2002 report), 118 (March 13, 2002 report).] Dr. McCaffrey stated in the Spine Questionnaire that Plaintiff's range of motion in her cervical spine had decreased to approximately fifty percent. [AR 317.] The December 10, 2002 report states that Plaintiff has a sixty percent range of motion in her cervical spine. [AR 217.] The November 19, 2002 and October 22, 2002 reports states that her range was seventy percent, and the September 10, 2002 report states eighty percent. [AR 226, 235, 244.] Plaintiff had fifty percent range of motion in her cervical spine from December 11, 2001 to February 20, 2002, [AR at 147, 141, 134, 126,] but the subsequent reports show improvement. There is no report which showed that Plaintiff's range of motion declined after the December 10, 2002 examination. The Spine Questionnaire also states that Plaintiff's muscle strength had decreased to 3/5, [AR 318,] but all of Dr. McCaffrey's reports which rate her muscle strength in that

_____

[12] An antalgic gait is: "A characteristic gait resulting from pain on weightbearing in which the stance phase of gait is shortened on the affected side." See Graham Dark, The On-line Medical Dictionary (1997–2003), http://cancerweb.ncl.ac.uk/omd/index.html.

manner rate her strength and tone at 4/5.  [See, e.g., AR 217 (December 10, 2002 report), 244 (September 10, 2002 report), 119 (March 13, 2002 report), 147 (December 11, 2001 report).]  The Spine Questionnaire states that Plaintiff had positive straight leg raising tests, [AR 317,] but there is no record of this in the December 10, 2002 report.  The February 1, 2001 and February 20, 2001 reports indicate a positive straight leg raise test, [AR 135, 127,] but the March 13, 2001 and April 16, 2001 reports indicate a negative test.  [AR 119, 110.]  None of the subsequent reports discuss the straight leg raise test.  In addition, the reports which discuss Plaintiff's balance, coordination, and reflexes state that they are normal.  [See, e.g., AR 218 (December 10, 2002 report), 254 (August 13, 2002 report), 135 (February 1, 2002 report).]

Thus, there is substantial evidence supporting the ALJ's ruling that Dr. McCaffrey's findings in the Spine Questionnaire are inconsistent with the clinical records.  The ALJ articulated specific and legitimate reasons for discounting the Spine Questionnaire.  This Court therefore finds that the ALJ did not err in discounting Dr. McCaffrey's opinions in determining whether Plaintiff's impairments met or medically equaled a listed impairment.

D.    **Step Four**

18

The ALJ found that Plaintiff had the residual functional capacity to perform sedentary work involving lifting or carrying no more than ten pounds.  He therefore found that Plaintiff could return to her past relevant work as a telemarketer, account clerk, or insurance clerk.  [AR 20.] Plaintiff argues that the ALJ's finding is not supported by substantial evidence because: 1) the ALJ failed to give proper weight to Dr. McCaffrey's opinion; 2) the ALJ's adverse credibility finding was erroneous; and 3) the ALJ erred in failing to address the effect of her obesity and her headaches on her RFC.

### 1.   Dr. McCaffrey's opinions

In determining Plaintiff's RFC, the ALJ noted that, according to Dr. McCaffrey's opinions, Plaintiff could not sit, stand, walk, and lift/carry as would be necessary to perform a job with even the lowest exertion level.  [AR at 19.]  The ALJ ruled that Dr. McCaffrey's opinions were "entitled to limited weight because the objective clinical findings and diagnostic studies do not support a determination [that Plaintiff] might be precluded from all work activity on more than a temporary basis."[13]  [Id.]

---

[13] Plaintiff argues that the ALJ applied the wrong test because the applicable inquiry is whether she is able to engage in substantial gainful activity, not whether she is precluded from all work.  [Opening Brief at 8.]  The ALJ noted, however,

(continued...)

In her opening brief, Plaintiff states that there were only two sources of medical opinion: Dr. McCaffrey and State Agency physicians who neither treated nor examined her. [Opening Brief at 4.] Darnell Richey, M.D., who apparently was an SSA consultant, opined that Plaintiff would have the capacity to perform work with light exertion, with some limits on her postural movement.[14] [AR at 290.] The ALJ gave this opinion limited weight because Dr. Richey did not examine Plaintiff and did not review documents that were submitted after he prepared his opinion. [AR at 19.] Plaintiff argues that, because the ALJ discounted the Agency physician's opinion, Dr. McCaffrey's opinion should be viewed as an uncontradicted medical opinion. [Opening Brief at 4, 6.] Plaintiff thus contends that the ALJ could not reject Dr. McCaffrey's opinions without clear and convincing reasons for doing so. See Connett, 340 F.3d at 874. Plaintiff's argument is misplaced. The ALJ did not completely

---

[13](...continued)
that based on Dr. McCaffrey's proposed limitations, Plaintiff would be essentially precluded from all work. [AR at 19.] Thus, the ALJ's reference to "a determination that the claimant might be precluded from all work activity" was a response to Dr. McCaffrey's opinions. The statement does not indicate that the ALJ applied the wrong standard.

[14] The ALJ did not identify the consultant by name, nor did he identify the document giving the consultant's findings. [AR at 19.] Based on the opinions the ALJ cited, it appears that he was referring to the "PHYSICAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT" that Dr. Richey completed on January 23, 2003. [AR 283-90.]

discount Dr. Richey's opinion; he considered it but gave it
limited weight.  In addition, as noted above, there is some
conflict within Dr. McCaffrey's own reports and opinions.  Thus,
there was conflicting medical evidence and the ALJ could
disregard Dr. McCaffrey's opinion if the ALJ articulated specific
and legitimate reasons for doing so.

　　　　Dr. McCaffrey's most recent evaluation of Plaintiff's
ability to perform physical tasks was in the June 27, 2003 series
of questionnaires.  In the "MEDICAL ASSESSMENT OF ABILITY TO DO
WORK-RELATED ACTIVITIES (PHYSICAL)" questionnaire ("Work
Questionnaire"), he wrote that Plaintiff had the following
limitations: lift and carry no more than ten pounds occasionally
and one pound frequently; stand or walk no more than one hour in
an eight-hour day; sit no more than two hours in a day and no
more than one hour without breaks; no climbing or crouching; and
only occasional kneeling, stooping, balancing, or crawling.  [AR
at 324-25.]  In Plaintiff's "REST QUESTIONNAIRE", Dr. McCaffrey
indicated that Plaintiff needed "complete freedom to rest
frequently without restriction" and that she needed to "lie down
and/or rest for substantial periods of time during the day for
relief of pain and/or fatigue[.]"  [AR 326.]  Based on
Dr. McCaffrey's assessment of her limitations, Plaintiff could
not sit, stand, walk, and lift/carry as would be necessary to
perform a job with even the lowest exertion level.  [AR at 19.]

The ALJ ruled that Dr. McCaffrey's opinions were entitled to limited weight because they were not supported by the objective clinical findings and diagnostic studies.  [Id.]  The ALJ noted that Dr. McCaffrey consistently reported that Plaintiff showed "no evidence of antalgia or motion abnormality; normal cervical lordosis; some limitation of lumbosacral range of motion; and, full active range of motion of all the extremities" with no neurological deficits.  [AR 18-19.]  In fact, Dr. McCaffrey's December 10, 2002 report stated, for both Plaintiff's left and right upper extremity: "Full active range of motion at the shoulder, elbow, wrist, and fingers without crepitation, pain or contracture."  [AR 218.]  The medical findings that the ALJ identified conflict with Dr. McCaffrey's assessment in the Work Questionnaire.  In addition, this Court notes that, whenever Dr. McCaffrey evaluated Plaintiff's upper extremities, he stated that her strength and tone were normal and that she had no "spasticity, rigidity, or atrophy."  [See, e.g., AR 218 (December 10, 2002 report), 254 (August 13, 2002 report), 110-11 (April 16, 2002 report).]  The ALJ articulated specific and legitimate reasons for rejecting Dr. McCaffrey's opinions in the Work Questionnaire.  This Court therefore finds that the ALJ did not err in disregarding Dr. McCaffrey's opinion in determining Plaintiff's RFC.

## 2. **Adverse credibility finding**

22

The ALJ noted that Plaintiff testified that she was "unable to perform basic work activity for prolonged periods due to chronic neck pain, lower back pain, and headaches." [AR 17.] Plaintiff stated in her testimony and a written statement that she spent her time watching television and reading and that she occasionally went grocery shopping but did not carry the bags. She testified that does not cook, wash dishes, or do laundry. [Id.] Plaintiff also testified that she could not sit for more than thirty minutes at a time without changing position and that she had to alternate between sitting and standing throughout the day. Prolonged sitting and standing, driving, or bending exacerbate her lower back pain. The ALJ found that Plaintiff's testimony and written statement were "not entirely credible" because of the discrepancies between her claims and the medical evidence.[15]  [Id.]  He went on to state that the overall record did not indicate that Plaintiff's impairments were of such severity and intensity to preclude her from all work.  [Id.] Plaintiff argues that the ALJ erred in making an adverse credibility finding on this basis because there was clinical evidence establishing her painful conditions and the ALJ did not find that there was evidence of malingering.  [Opening Brief at 7.]  Further, she alleges that the ALJ failed to consider the

---

[15] Contrary to Plaintiff's argument, the ALJ did not base his adverse credibility ruling on discrepancies between her written statement and her testimony at the hearing.

fact that she is only able to do her limited daily activities because she structures them in a way to minimize the exacerbation of her condition.  They are therefore not transferable to gainful employment.  [Id. at 8-9.]

The Ninth Circuit has stated that, "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). Unless there is evidence that the plaintiff is malingering, the ALJ must give clear and convincing reasons for rejecting her pain testimony.  The ALJ must identify what testimony was not credible and what medical evidence disproved the plaintiff's testimony; the ALJ cannot render only general findings.  See id.  There is objective evidence of Plaintiff's medical impairments in the record and the ALJ did not find that Plaintiff was malingering. The ALJ therefore had to articulate clear and convincing reasons for rejecting Plaintiff's subjective testimony regarding how her pain limits her daily activities.

The ALJ first reviewed the development of the diagnoses of Plaintiff's impairments.  He noted that Dr. McCaffrey referred Plaintiff to Terry G. Smith, M.D., an orthopedic surgeon. Dr. Smith observed that Plaintiff's pain was "localized at the

lumbosacral junction, with only slight radiation above and below." [AR 18.]  The MRI scan of her lumbar spine was unremarkable and the x-ray studies of her back were normal. Dr. Smith therefore diagnosed possible facet joint mediated pain and opined that Plaintiff did not have a problem that required surgery.[16]  [Id.; see also AR 178 (Dr. Smith's May 1, 2002 report).]  The ALJ also cited Plaintiff's June 27, 2002 visit with Dr. McCaffrey.  During that visit, she complained of pain to her head, neck, back, and upper left leg, but Dr. McCaffrey observed that Plaintiff did not appear to be in any apparent pain and stated that her gait and sitting and standing tolerance appeared normal.  [AR 18; see also AR 271 (June 27, 2002 report).]  In his most recent full report, Dr. McCaffrey noted that Plaintiff appeared to be in "mild pain guarding the area of injury."  [AR 216 (December 10, 2002 report) (emphasis added).] Further, as noted above, the ALJ cited Dr. McCaffrey's consistent reports of normal musculoskeletal function, full range of motion in Plaintiff's upper extremities, and lack of neurological deficits.  [AR 18-19.]  The ALJ also discussed the discrepancies

---

[16] Dr. Smith apparently decided in the later months of 2002 that Plaintiff may be a candidate for surgery.  Dr. McCaffrey's reports state that Plaintiff saw Dr. Smith for a consultation regarding epidurals and surgery.  Dr. Smith wanted to see Plaintiff's response to the epidurals before contemplating surgery.  [AR 215 (December 10, 2002 report).]  The record, however, does not contain any documentation from Dr. Smith other than the May 1, 2002 report.

between Dr. McCaffrey's Spine Questionnaire and his reports. [AR 19.] These aspects of the record do not support the intensity and severity of Plaintiff's subjective pain testimony. The ALJ articulated clear and convincing evidence to support his finding that Plaintiff's pain testimony was "not entirely credible". This Court therefore finds that the ALJ did not err in rendering an adverse credibility finding.

### 3.    **Obesity**

Plaintiff also argues that the ALJ erred in failing to address the effect that her obesity had on her RFC. [Opening Brief at 10.] Defendant contends that the ALJ's failure to address Plaintiff's obesity was not reversible error because Plaintiff did not allege disability based on obesity in her application for benefits, her hearing testimony, or her request for Appeals Council review. [Answering Brief at 13–14.] SSR 02–1P states, in pertinent part:

> We will consider obesity in determining whether:
>   • The individual has a medically determinable impairment.
>   • The individual's impairment(s) is severe.
>   • The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings. . . .
>   • The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy.

SSR 02–1P, available in West's Social Security Reporting Service (1992 – April 2005 Rulings) at 261–62 (Supp. 2005) [hereinafter

West's 2005] (internal citations omitted).  Thus, even if the claimant does not raise the issue of her obesity, where there is evidence of obesity in the record, the ALJ is required to consider the effects of the obesity in determining whether the claimant is disabled.  See Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) ("Although Skarbek did not specifically claim obesity as an impairment (either in his disability application or at his hearing), the references to his weight in his medical records were likely sufficient to alert the ALJ to the impairment." (citation omitted)).  Further, SSR 02-1P defines "we" as "either the Social Security Administration or the State agency making the disability or blindness determination; i.e., our adjudicators at all levels of the administrative review process and our quality reviewers."  SSR 02-1P at n.1, available in West's 2005 at 259 (emphasis added).  Thus, the Appeals Council apparently also had an obligation to consider evidence of obesity, even though Plaintiff did not raise the issue in her request for review.  This Court must therefore review Plaintiff's obesity argument.[17]

_____

[17] The Court notes that this is contrary to the general rule that the reviewing court need not address issues that the plaintiff did not raise before the Appeals Council.  See Bergfeld v. Barnhart, 361 F. Supp. 2d 1102, 1110 (D. Ariz. 2005).  This Court has not found any case law supporting the proposition that a plaintiff may raise the obesity issue in her district court appeal where she did not allege disability due to obesity in either her application for benefits, her administrative hearing
(continued...)

Defendant also argues that the ALJ's failure to discuss Plaintiff's obesity is not reversible error because there is no diagnosis of obesity in the medical record.  [Answering Brief at 13.]  SSR 02-1P states, in pertinent part:

> When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity.  However, in most such cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity.

SSR 02-1P, available in West's 2005 at 262.  Thus, the fact that no doctor expressly diagnosed Plaintiff as obese should not have prevented the ALJ from considering any evidence of Plaintiff's obesity.  The Court now turns to the issue whether there was evidence in the record that should have alerted the ALJ to the obesity issue.

"Obesity is a complex, chronic disease characterized by excessive accumulation of body fat."  Id. at 260.  The SSA follows the National Institutes of Health's guidelines on the identification of obesity, which determines obesity based on a

---

[17](...continued)
before the ALJ, or her request for review before the Appeals Council.  SSR 02-1P, however, appears to require such a result.

person's Body Mass Index ("BMI").[18]  For both men and women, a
BMI of 30.0 or more indicates obesity.  There are three
categories of obesity: Level I, which includes BMI's of 30.0 to
34.9; Level II, which includes BMI's of 35.0 to 39.9; and Level
III, which includes BMI's of 40.0 or more.  Level III obesity is
considered "extreme" obesity and carries the greatest risk of
developing impairments related to obesity.  See id.  Obesity can
lead to or complicate various health problems, including:
"chronic diseases of the cardiovascular, respiratory, and
musculoskeletal body systems", adult-onset diabetes, gall bladder
disease, hypertension, heart disease, stroke, osteoarthritis, and
sleep apnea.  See id. at 261.  "Obesity may also cause or
contribute to mental impairments such as depression.  The effects
of obesity may be subtle, such as the loss of mental clarity and
slowed reactions that may result from obesity-related sleep
apnea."  Id.

        In her undated disability report, Plaintiff stated that
she was five feet, five inches and 243 pounds.  [AR 64.]  This
yields a BMI of 40.4.  According to Dr. McCaffrey's reports,

---

        [18] A person's BMI is her weight in kilometers divided by the
square of her height in meters.  See SSR 02-1P available in
West's 2005 at 260.  BMI can also be calculated by dividing
weight in pounds by the square of height in inches, then
multiplying the result by 703.  See National Center for Chronic
Disease Prevention and Health Promotion, Body Mass Index
Calculator, available at
http://www.cdc.gov/nccdphp/dnpa/bmi/calc-bmi.htm.

Plaintiff's weight reached 257 pounds on October 22, 2002, [AR 234,] yielding a BMI of 42.8.  At the time of Dr. McCaffrey's first report on September 22, 2001, Plaintiff weighed 220 pounds, [AR 170,] yielding a BMI of 36.6.  She remained approximately the same weight up to January 4, 2002.  [AR 162, 154, 147, 141.]  By her February 1, 2002 visit, however, Plaintiff's weight had jumped to 240.75 pounds.  [AR 134.]  At her February 20, 2002 visit, she was still 240 pounds and Dr. McCaffrey wrote that her BMI was forty.  Although he did not expressly state that Plaintiff was obese, he did note that a normal BMI was between twenty-five and twenty-seven.  [AR 126.]  He also wrote that Plaintiff was "very unhappy that she is gaining weight due to injury and medications.  She is feeling increased pain due to this increased weight."  [AR 124.]  In his March 13, 2002 report, Dr. McCaffrey noted that Plaintiff said she had gained fifteen pounds since her injury.  [AR 116.]  Thus, although Plaintiff was already obese when she began her treatment with Dr. McCaffrey, she became extremely obese in a one month period and gained another approximately fifteen pounds thereafter.  Dr. McCaffrey's reports noted that Plaintiff attributed her weight gain to her injury and her medications and that she experienced more pain as she gained weight.  In addition to her injury, Plaintiff had conditions that are caused by or aggravated by obesity, *i.e.* depression and disturbed sleep.  See, supra note 1.  These

factors should have alerted the ALJ to the obesity issue.  See
Skarbek, 390 F.3d at 504.

        The fact that the ALJ failed to address evidence of
Plaintiff's obesity does not automatically require remand.  In
Skarbek, the Seventh Circuit declined to remand the case based on
the ALJ's failure to address the plaintiff's obesity because the
plaintiff did not specify how his obesity affected his ability to
work.  In addition, the court held that the ALJ had indirectly
considered the plaintiff's obesity because the ALJ adopted the
limitations suggested by plaintiff's doctors, who were aware of
his obesity.  See id.; see also Rutherford v. Barnhart, 399 F.3d
546, 552-53 (3d Cir. 2005) (applying the Skarbek analysis and
holding that remand was not required because it would not affect
the outcome of the case).  In the present case, Plaintiff does
not state how her obesity has affected her ability to work.
[Opening Brief at 9-10; Reply Brief at 12-14.]  The ALJ, however,
cannot be said to have indirectly considered Dr. McCaffrey's
assessment of Plaintiff's obesity because, as discussed above,
the ALJ did not adopt the limitations he suggested.  This Court
therefore finds that the ALJ committed reversible error by
failing to consider Plaintiff's obesity.  Remand is therefore
appropriate.

        Plaintiff argues that the record is fully developed
and, therefore, the district court should remand for the

immediate award of benefits.  [Opening Brief at 11-12.]  A
reviewing court has the discretion to remand a case to allow for
further evidence or findings or for the immediate calculation and
award of benefits.  See McCartey v. Massanari, 298 F.3d 1072,
1076 (9th Cir. 2002).  A remand for an award of benefits is
appropriate when the record is fully developed and further
administrative proceedings would not be useful.  See id.

> Such a circumstance arises when: (1) the ALJ has
> failed to provide legally sufficient reasons for
> rejecting the claimant's evidence; (2) there are
> no outstanding issues that must be resolved before
> a determination of disability can be made; and (3)
> it is clear from the record that the ALJ would be
> required to find the claimant disabled if he
> considered the claimant's evidence.

Id. at 1076-77 (citations omitted).  In the present case, the
record is not fully developed as to the effect of Plaintiff's
obesity on her RFC.  Even though Plaintiff is within the
extremely obese category, this "do[es] not correlate with any
specific degree of functional loss."  SSR 02-1P, available in
West's 2005 at 260.  Even though Dr. McCaffrey made note of
Plaintiff's obesity and Plaintiff's beliefs regarding the
relationship between her injury and her weight gain, he himself
made no findings in that regard.  This Court therefore finds that
further administrative proceedings to address the effect of
Plaintiff's obesity on her impairments and her ability to work
would be useful.  Although Plaintiff raised the obesity issue in
the context of the ALJ's determination of her RFC, [Opening Brief

at 10,] this Court recommends that the district court instruct the ALJ on remand to address Plaintiff's obesity at all of the steps required by SSR 02-1P.  <u>See</u> SSR 02-1P, <u>available in</u> West's 2005 at 261-62.

### 4.   Headaches

Finally, Plaintiff argues that the ALJ erred in failing to address the effects of her headaches on her RFC.  [Opening Brief at 11.]  For the reasons stated above, this Court finds that the ALJ considered Plaintiff's headaches as part of the combination of impairments caused by her disc herniations.  The ALJ's failure to separately address the effect of Plaintiff's headaches on her RFC was not reversible error.

### CONCLUSION

On the basis of the foregoing, this Court finds that the ALJ committed legal error by failing to consider evidence of Plaintiff's obesity.  This Court further finds that the ALJ's decision is not supported by substantial evidence because of his failure to consider Plaintiff's obesity.  This Court therefore FINDS AND RECOMMENDS that the district court REVERSE the Commissioner's decision and remand the case for further administrative proceedings to consider the effect of Plaintiff's obesity at the pertinent stages of the five-step disability analysis.

IT IS SO FOUND AND RECOMMENDED.

DATED at Honolulu, Hawai`i, February 21, 2006.



                                     Leslie E. Kobayashi
                                     United States Magistrate Judge

**BRENDA S. AGBUNAG V. JOANNE B. BARNHART**; CIVIL NO. 04-00656 HG-LEK; FINDINGS AND RECOMMENDATION TO REVERSE THE DECISION OF THE COMMISSIONER OF THE SOCIAL SECURITY